*610 OPINION OF THE COURT
Herman Cahn, J.
In these CPLR article 78 proceedings, petitioners, Daphna Gutman and Evelyn Carrillo (collectively petitioners), tenured teachers employed by respondent, Board of Education of the City School District of the City of New York, move to compel the respondent to expunge letters that were placed in each of their personnel files. Both teachers are employed at ES. 345 in New York City.
Facts
A. Ms. Gutman
On April 3, 2006, a student informed Ms. Gutman that she did not want to attend a small group lesson because she was uncomfortable with the way the teacher, Gregory Michaelides, allegedly touched her friend. Ms. Gutman states that, on the same afternoon, she reported the student’s accusation regarding Michaelides to both the conflict resolution teacher and the assistant principal. The following day, Ms. Gutman spoke to Ms. Holt, the school principal, and, at Ms. Holt’s direction, prepared a letter directing Michaelides to report to the Regional Operations Center. According to Ms. Gutman, she never saw any actual inappropriate conduct by Michaelides and, prior to April 3, 2006, had not received complaints from students that Michaelides had touched them inappropriately.
Thereafter, on April 6, 2006, Ms. Gutman learned that Michaelides was being investigated by the Office of the Special Commissioner of Investigation (the SCI) for allegedly touching students inappropriately. Ms. Gutman contends that when she became aware of the investigation, she voluntarily spoke to the investigators on two occasions to describe the conversation she had with the student on April 3, 2006 and the actions she took as a result of that conversation.
B. Ms. Carrillo
Ms. Carrillo states that during the course of her employment she observed Michaelides touch students’ arms or hair, but never in an inappropriate manner. She also states that she had a conversation with Michaelides wherein she cautioned him against giving a Christmas gift to just one of his students.
Ms. Carrillo contends that when she learned that the SCI was investigating Michaelides, she voluntarily met with the investigators to discuss the conversations she had with him and the interactions she had witnessed.
*611 C. The SCI’s Findings
On November 28, 2006, the SCI issued a report which stated that its investigation “substantiated that . . . Michaelides . . . inappropriately touched six female students .... The investigation also substantiated that a number of teachers at the school failed to report inappropriate conduct, including touching, committed by Michaelides.” The report concludes:
“In contrast to the convincing accounts provided by the students, . . . the statements of the educators interviewed indicated a disregard for the welfare of the children. These teachers completely ignored, overlooked, or minimized behavior on the part of Michaelides, which should have been reported. Each teacher interviewed observed some kind of touching by Michaelides, but did not report it. Then, when SCI investigators asked about Michaelides, they attempted to distance themselves from the impropriety of the situation. For example: . . .
“Carrillo observed Michaelides engage in a pattern of touching the hair and arms of female students. She also knew about the teddy bear gift, but merely told Michaelides that he could not single out one child for a gift ....
“Gutman described Michaelides as ‘affectionately physical.’ She also said his conduct was ‘unwise,’ but ‘not inappropriate’ even though Gutman had observed male students pull away from Michaelides when he touched them on the back.”
The SCI recommended that “appropriate disciplinary action” be taken against Ms. Carrillo and Ms. Gutman. (Petitions, exhibit B at 6 [emphasis added].)
On December 5, 2006, Ms. Gutman met with Ms. Holt regarding the SCI report, at which time she indicated that the SCI report inaccurately reflected her conversation with the investigator. It is pleaded in the petition that Ms. Gutman explained that she had reported the matter immediately and that she told the investigator she never saw Michaelides inappropriately touch a student. Ms. Gutman contends that, at the meeting, Ms. Holt indicated she believed Ms. Gutman and recognized there were many errors in the report. However, on January 16, 2007, despite Ms. Holt’s statements at the December 5th meeting, a letter of reprimand dated December 22, 2006 signed by Ms. Holt was placed in Ms. Gutman’s personnel file. That letter states:
*612 “You were summoned to this meeting so that you could have the opportunity to defend your actions surrounding the Mr. Greg Michaelides case. As we discussed during our meeting the investigator’s findings were substantiated. They found that you showed a willful disregard for the welfare of children when you failed to report any instances or [sic] inappropriate contact between Mr. Michaelides and your students.
“After having read the report, I agreed with the findings and concluded that you did in fact show a willful disregard for the welfare of children when you failed to report any instances of inappropriate contact between Mr. Michaelides and your students. Please be advised that a copy of this letter will be placed in your file.”
Ms. Carrillo also met with Ms. Holt on December 5, 2006. At the meeting, she explained that she never saw Michaelides engage in any inappropriate contact with students and that she voluntarily met with the investigator as soon as she became aware of the allegations. However, on January 16, 2007, a letter of reprimand dated December 22, 2006 signed by Ms. Holt was likewise placed in Ms. Carrillo’s personnel file. The wording of that letter is identical to the above-quoted language from the letter placed in Ms. Gutman’s file.
It is undisputed that a copy of the SCI’s findings dated November 28, 2006 was also placed in each petitioner’s personnel file along with the letter.
Contentions
In support of the petitions, petitioners contend that section 3020 of the Education Law requires respondent to follow the procedures detailed in Education Law § 3020-a before imposing discipline on a teacher — that is, petitioners should have been served with a statement of charges and been afforded the opportunity of a hearing regarding those charges prior to any disciplinary action being taken.
In opposition, respondent contends that relief in the form of mandamus to compel is inapplicable here because the procedures detailed in Education Law § 3020-a were not required. Respondent claims that the December 22, 2006 letter is not “discipline.” Rather, it contends that the letters are simply statements by the school principal that derogate petitioners’ conduct and are intended to warn or instruct. Respondent argues that *613 article 21 (A) of the United Federation of Teachers contract provides for material to be placed in a tenured teacher’s personnel file without a hearing and for such material to be removed in three years if it does not become the subject of disciplinary charges.
Discussion
A special proceeding under article 78 of the Civil Practice Law and Rules is appropriate to determine “whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed.” (CPLR 7803 [3].) This is precisely the question being asked in this proceeding and, thus, an article 78 proceeding in the nature of mandamus is the appropriate vehicle for the relief requested. Here, if the court determines that petitioners have established a clear right to the relief they request pursuant to Education Law § 3020-a, then removal of the letter is a purely ministerial act that petitioners are entitled to under the law. (Matter of Legal Aid Socy. of Sullivan County v Scheinman, 53 NY2d 12, 16 [1981] [mandamus lies to enforce a duty that is purely ministerial]; see also e.g. Matter of Brusco v Braun, 84 NY2d 674 [1994]; Matter of Civil Serv. Empls. Assn. v Southold Union Free School Dist., 204 AD2d 445 [2d Dept 1994]; Krohn v City of New York Dept. of Educ., 2007 NY Slip Op 30993[U] [Sup Ct, NY County 2007].)
Education Law § 3020 (1) states that “[n]o person enjoying the benefits of tenure shall be disciplined . . . during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article.” Education Law § 3020-a requires that: (1) written charges against the employee be filed with the board of education; (2) the board must determine whether probable cause exists to bring a disciplinary proceeding within five days of receipt of the charges; (3) if probable cause is found, the board must provide the employee with a written statement specifying the charges and the maximum penalty if the employee does not request a hearing; and (4) the employee then has 10 days in which to request a hearing. At the hearing, each party has the right to be represented by counsel, subpoena witnesses and cross-examine witnesses.
In Holt v Board of Educ. of Webutuck Cent. School Dist. (52 NY2d 625 [1981]), the Court of Appeals held that, although a disciplinary reprimand may not be issued without a finding of *614 misconduct pursuant to Education Law § 3020-a, critical administrative evaluations by a teacher’s supervisor need not be afforded such procedural protections. In Holt, the Court reviewed the letters placed in the teacher’s personnel file and found that a hearing was not required because, although the letters were sharply critical, “the purpose of such communications — to call to the teacher’s attention a relatively minor breach of school policy and to encourage compliance with that policy in the future — is also clear.” (Id. at 633.)
In Appeal of Richardson (24 Ed Dept Rep 104, 106 [decision No. 11,333]), the Commissioner of Education applied the Holt decision to order a memorandum expunged from a tenured teacher’s file. There the Commissioner set forth the factors to be considered in determining whether a letter is a critical administrative evaluation or a disciplinary reprimand:
“Those factors include whether the letter is from the teacher’s immediate supervisor or from the board of education; whether the letter is directed towards an improvement in performance or is a formal reprimand for prior misconduct; whether the letter is in the nature of a performance evaluation or a castigation for misconduct; and the severity of the misconduct and of the admonition or reprimand.”
Relying on Richardson, the Commissioner found, in Appeal of Fusco (39 Ed Dept Rep 836, 843 [decision No. 14,396]), that a memorandum placed in a principal’s file was a disciplinary reprimand because, among other things, it “contains no constructive criticism nor a single suggestion for improvement. Instead, it focuses exclusively on castigating petitioner for prior alleged misconduct.” Moreover, the Commissioner found that the memorandum did not address minor breaches of school policy, “but chastised petitioner for serious misconduct.” (Id.)
In these proceedings, the letters signed by the school principal were issued in response to the SCI’s recommendation “that appropriate disciplinary action be taken against . . . Carrillo . . . and Gutman” and both the letter and the SCI’s investigatory report were placed in each petitioner’s personnel file.* The principal’s letters stated that she agreed with the SCI’s findings that petitioners “showed a willful disregard for the welfare of *615 children” by their failure to report any instances of inappropriate conduct that occurred between Michaelides and any students. The letters solely focused on the claimed past misconduct of the petitioners and castigated them for their actions. There is no indication that the letters were intended to encourage Carrillo and Gutman to improve their performance or that they were meant to instruct them as to future matters, as there were no suggestions regarding improvement nor any statements that the purpose of the letters was evaluative rather than disciplinary.
The inclusion of the SCI report in each petitioner’s personnel file further castigated the teachers by detailing their alleged misconduct beyond the principal’s more general description. It stated: “[T]he statements of the educators interviewed indicated a disregard for the welfare of the children. These teachers completely ignored, overlooked, or minimized behavior on the part of Michaelides, which should have been reported.” Such language makes it clear that the teachers were being reprimanded for their claimed failure to take appropriate actions.
In addition, the letters cannot be viewed as correcting a “minor breach of school policy.” (Holt, 52 NY2d at 633.) New York City Board of Education Chancellor’s Regulation A-750 (Sept. 5, 2000) concerns reports of suspected child abuse. The regulation makes every school employee a mandated reporter and requires the employee to report suspected child abuse to the principal immediately. (Answer, exhibit 4, § 1.1.1.a.) The regulation also requires every employee to report suspected sexual abuse to the SCI, and states that: “[t]he knowing failure of an employee ... to report said misconduct is cause for removal from office or employment.” (Answer, exhibit 4, § 1.4.) Moreover, section 3.2 of the regulation states: “[u]nder Social Service[s] Law, the willful and knowing failure to report child abuse may result in criminal action or civil liability if the employee has reasonable cause to suspect it. It may also result in Board disciplinary action against the employee.” Here, both the principal’s and the SCI’s accusations that the petitioners endangered the welfare of children by failing to report alleged inappropriate touching could not only be detrimental to their careers, but also expose them to criminal and civil liability. Such serious allegations require that petitioners be afforded the due process protections available under Education Law § 3020-a. (See Civil Serv. Empls. Assn., 204 AD2d at 446 [letter that alleged sexual harassment without due process protections must *616 be expunged]; see also Myers v Chester Union Free School Dist., 300 AD2d 287 [2d Dept 2002]; Jones-Hardwick v Board of Educ. of City School Dist. of City of N.Y., 2007 NY Slip Op 33768[U] [Sup Ct, NY County 2007, Acosta, J.].)
Accordingly, it is ordered and adjudged that the petitions are granted; and it is further ordered and adjudged that the principal’s December 22, 2006 letters constitute a disciplinary measure taken without due process in violation of Education Law § 3020-a; and it is further ordered and adjudged that respondent is directed to expunge said letters from petitioners’ personnel files.

 The SCI also forwarded a copy of the report to the Office of Legal Services and to the State Education Department “for whatever action it deems appropriate.”